FILED

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA 2012 FEB -8 A 9 11
ALEXANDRIA DIVISION

CLERK
US BANKRUPTCY COURT
ALEXANDRIA DIVISION

Re:

**FATEMEH NAJAFIAN**                           Case No. 09-18112, BFK
**Plaintiff,**                                 Chapter 07

**Vs.**

                                               Adversary Case No: 11-01650-BFK

**SALLIE MAE, INC.**
**And**
**EDUCATIONAL CREDIT MANAGEMENT CORPORATION**
*Defendants,*

### PLAINTIFF RESPONSE TO DENFENDANT(S)' FIRST SET OF INTERROGATORIES AND FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

**RESPONSES TO INTERROGATORIES:**

NO. 1:          Fatemeh Najafian, age 64+, years old.

No. 2:          Anyone involved in production of certain documents and involved
                In certain events that Fatemeh Najafian would like their testimony
                Under oath and perhaps polygraphing, both working for Sallie Mae,
                INC. and others from institutions and organizations and
                Governmental agencies starting from the periods of her Medical
                Education and Training as an ophthalmologist and glaucoma
                Subspecialist.

No. 3.:         A:      This round, plaintiff has been unemployed since **March 24,**
                **2006 (termination without a cause which has been described in**
                (1)

Multiple Documents in her Bankruptcy case 09-18112, and its Appeals).

B:      Despite much difficulties and involvement in legal battles
        *starting immediately after her termination to prove her*

Without a cause termination that took almost 21 months, and Bankruptcy, and *despite a life of literally "living hell", plaintiff* has made every effort to obtain employment and many Ophthalmology practices, Institutions, Organizations she applied by sending out, and taking in person, and many through the American Academy of Ophthalmology Site and directly applying via the site. Some of these Fatemeh Najafian applied multiple times.
In addition, essentially, every advertised ophthalmologist position, be it "general Ophthalmology, and  combination general and glaucoma Ophthalmologist as well as just s Sub-specialty Glaucoma that were advertised
In tri-state (Washington, D.C., Maryland, Virginia) and within 50-60 miles (one way) and even longer, and out of states. Every Out of tri-state area that Fatemeh Najafian applied to both Personally, and or through nine RECRUITER AGENCIES When it got to the point for Fatemeh Najafian to go for an Interview never materialized. A thick folder of faxes and notes where and when plaintiff had Applied to and certain practices and organizations and
Institutions even multiples times which she supplied to her Attorney representing her at the American Arbitration Association with copies to her Employer Capital Eye Physician And Surgeons, LLC's counsel during the "Discovery Period", Which Fatemeh Najafian kept adding afterwards. This folder kept getting thicker and thicker and  it was in her view *every time she went home*. On 1/25/2012
she noted the folder missing along with much documents related to the American Arbitration Association (including accounting documents that would show how hundreds of thousands of dollars of Fatemeh Najafian's fees for Services collected in the name of at least one of the two partners of the Capital Eye Physicians and Surgeons, LLC against Federal Rules and Regulations, the final about twenty-page Brief, which included over two million dollars losses to Fatemeh Najafian, and *much more documents noted missing by Fatemeh Najafian on 01/25/2012*. On 01/26/2012, Fatemeh Najafian contacted the Law firm representing her at the AAA and now the President (was with the firm at the of Fatemeh

(2)

Najafian AAA case – and prepared with his assistant attorney the final "Brief") and they would supply the information and *documents related to the case*. Additionally, when Fatemeh Najafian met with Mr. Frank Bove and MS. Martha Davis of Office of The U.S. Trustee in March of 2010, at 115 South Union Street, Alexandria Va. 22314, which was recorded by them, Fatemeh Najafian offered to supply the documents but *was declined*. And Fatemeh Najafian has given multiple summaries of it in the documents in the Bankruptcy Court and its Appeals.

NO. 4:    The INTERROGATORY NO. 4: " For each job plaintiff has Held in the last five (5) years, including plaintiff's current job(s), if any, provide the following" A, B, C, D, E, F. This INTERROGATORY is to avoid involvement of the Capital Eye Physicians and Surgeons, LLC. Since the Counsel For the defendant(s) has full access to the electronic files of The Bankruptcy Court and Appeal Courts associated with the Case that the plaintiff has been unemployed since 3-24-2006 is almost six (6) years – and this would avoid the without cause termination of Fatemeh Najafian and frauds and co-conspiratory role of the Capital Eye Physicians and Surgeons, LLC in many ways : including change in the terms Of her employment contract kept in Fatemeh Najafian Safe Deposit box at the Chevy Chase Bank, FSB. Added to it Additional crimes by the said bank and on its behalf In prevention of re-employment of Fatemeh Najafian, false And unbaked allegations and the defamation .......and Tremendous losses including *professional, social, financial and more leading to her eventual bankruptcy.*
Collection of hundreds of thousand dollars of Fatemeh Najafian's fees for services against the Federal Rules and Regulations without proper compensation of Fatemeh Najafian, *the termination without a cause which took almost 21 Months to prove wrong.*
The Counsel for the defendant(s) INTERRAGOTARIES are not in good faith to get to the truth, and Fatemeh Najafian demanded to answer to questions, and produce Documents from periods totally unrelated to the case and the defendant(s) represented by Counsel is not even producing minimum documents that would clarify what were the amounts of these Original loans and why they kept being twisted around to confuse the case and avoid the facts: which are:
THE VERY ORIGINAL LOANS AND PROMISSORY

(3)

NOTES. THE DEFEMENTS, AND FOREBARENCES THAT WOULD WITH NOTATIONS BY FATEMEH NAJAFIAN MULTIPLE TIMES PLEADING FOR HELP TO "UNBLACK LIST HER, TO STOP PREVENTION OF HER EMPLOYMENT". THE FORCED CONSOLIDATIONS. THE CHANGE IN THE NAMES OF THE LOANS. THE WITHOLDING INFORMATION ABOUT HER LOANS FROM HER. THE REFUSAL OF SALLIE MAE TO PURCHASE CERTAIN LOANS AT A RECUDED PRICE WHICH THE REDUCED PRICE WAS ALREADY MULTIPLE TIMES HIGHER THAN THE ORIGINAL LOANS, AFTER MANY PAYMENTS BY FATEMEH NAJAFIAN. THE REFUSAL OF SALLIE MAE TO SETTLE HER LOANS WHEN FATEMEH NAJAFIAN OFFERRED IT, AND SALLIE MAE'S FAILURE TO INFORM ANY OTHER INVOLVED OR WITH INTEREST IN PLAINTIFF'S LOANS, AND LACK OF ACTION WHEN FATEMEH NAJAFIAN FILED CLAIM AGAINST CHEVY CHASE BANK, AND CAPITAL ONE BANK,N.A. AND ON AND ON ......

**NO. 5:**   Licenses:  Information already in the files of the Bankruptcy Case No. 09-18112-BFK and along with Educational history .. Including in plaintiff's Curriculum Vitae:
However, and once more: Plaintiff has the following Licenses To practice Medicine and Surgery:

Active:  Maryland, Virginia and District of Columbia
Inactive:  Missouri (MO)
And PLEASE TAKE NOTICE: that keeping these licenses Has had much cost associated with them which the plaintiff Has paid from every fund that she had and when ran out sold Pieces of her family jewelry to pay for them making sure she is Ready to be re-employed as soon as possible.

**NO. 6:**   Officially None. Ethically many including at least her mother (92 years old).

**NO. 7:**   N/A

**NO. 8:**   N/A

**NO. 9:**   Plaintiff does not have the medical history or records of any of her family members.

(4)

**Plaintiff's years of exposure at the Rotonda to toxic fumes and Irritants has been described by her again the Bankruptcy case No. 09-18112, and its Appeals. Plaintiff described her exposure in the hand-written application and petition which Mr. Sheehy either neglected to include in the Petition that he filed on October 02, 2009 electronically without reviewing it with the Plaintiff.** Mr. Sheehy also neglected *to report in the petition* Information written out by hand by the plaintiff in regard to Plaintiff's student loans as given to her by Sallie Mae weeks Before and as late as weeks prior to 10-02-2009, and the figures On plaintiff's condominium, and during the course of Bankruptcy case plaintiff has including during Hearings in the Courts have corrected them.

In regard to fumes, irritants and toxins: Plaintiff has included much in her Bankruptcy Case, that she complained to including the ROTONDA, Fairfax County appropriate including Health and Environmental Agencies without response, and the ROTONDA only and only for the purpose of discrediting plaintiff, avoiding liability and timely correction of faulty generators and equipments, and to further compromise plaintiff to be re-employed criminally purchased a custom-made report (not from any Governmental agencies), and followed by coordinating a raid at plaintiff's home by the Woodburn by two women (Peterson and Davis) and creation of false and fabricated reports to label plaintiff with false labels, and their illegal distribution to other including The George Washington University. Plaintiff HAS NEVER HAD MENTAL ILLNESS
AND LYNCHING IS NOT A DIAGNOSIS.

Plaintiff has had wheezing in her lungs which she never had prior to exposure and back problems. Plaintiff has not afforded to purchase any health insurance since January 2010, and is being told (including when she did not funds available to pay for her Syntheroid) she is not qualified for any assistance until she is 65 years old. There are deformities and scars left on her bilateral lower extremities from trauma due to faulty, outdated equipment in the ROTONDA's gym, that despite long period of Medical treatment have become unsightly and permanent (this care was paid by plaintiff and her Health Insurance which she had to pay all out of pocket when lost her Employment on 3-24-2006 and not even a dollar paid by the ROTONDA or its Insurance Company)

**NO. 10:**   N/A

NO. 11:     "Any assistance received by plaintiff"
Plaintiff has been unemployed for almost six years (since 3-24-2006) and did not receive any assistance from any governmental, non-governmental, charity ..... including No unemployment benefits, Health care costs, legal costs .... None at all except the followings:

A:     In July 2011: from a local church a total of $60.00 gift card to spend on food and a one time only a box of food items (flour, oil, cans of foods, tea bags, cracker) and plaintiff spent to take two Courses in Christianity a 100 and a 400 level: out of pocket for Transportation, and a $26.00 books in support of the curriculums associated with the two courses (a total of $75.00 - $80.00).
And plaintiff hopes to pay back the gift of $60.00 an much more when re-employed

B:     From Fairfax County: Since 8/15/2011 a $200.00/month (two hundred dollars) food stamps and plaintiff has lived without heat or cooling for  the last several years, an two times (about $209.00 on 9-01-2011, and less than $138.00 in January 2012 for electrical bill assistance.

NO. 12:     Debts created by plaintiff since the filing of the bankruptcy 10-02-2009. Plaintiff has supplied to the Bankruptcy Court and Interim trustees all of her financial accounts be it checking, Money Market, IRA-Retirements with details and the defendant and its Counsel are welcome to review from the Electronic and Hard copy files kept by the interim trustees. Again this is an unfair INTERROGATORY:  the plaintiff is demanded to produce Tax documents for years, but debts only since the filing of the Bankruptcy negating the fact that since the plaintiff  has spent everything she had  since 3-24-2006 to keep her roof over her head, and  before retiring hat was to be used after retiring, and by the time she filed for bankruptcy she was already into using her retirement funds. Plaintiff has used up her retirement funds and  the only portion left is less than $10,000.00 (ten thousand dollars with much restrictions of distribution over the next nine years). The defendant(s) and its Counsel are well aware that financial institutions do not lend to a bankrupts, and therefore once the bankrupt plaintiff spent everything she had and desperate even to pay for transportation borrowed $400.00 (October 2010) from a friend and plaintiff from the sale one item of her

(6)

family jewelry paid back the loan recently when the couple lost their business and going through hard times themselves, and another $1,000.00 (one thousand dollar) from a relative who does not wish her name made public (the loan was made in the form of a check).

The claimed Condominium fees by the Rotonda (the amount is on the files of the Court) for three reasons are not fair or just:

(1): Although the claimed charges are post-petition, Condominium fees are charged from the owners of the unit- The ownership is still disputed and plaintiff has shown and shall continue to fight for her home to keep – and as plaintiff informed the Judge of the Bankruptcy Court on 01-24-2012 the charges are accepted by the plaintiff in that condition.

(2): The ROTONDA did not render services for fees claimed, and additionally has caused much harm and damages to the plaintiff. And there has been a "marathon" by the Chevy chase Bank, FSB, Capital One Bank, N.A., the Rotonda, and even this Adversary case, and much more to maximally stress the plaintiff to the level of her demise., and no one seems to mind or even care!

(3): As part of refinancing on June 15, 2004, both the Chevy Chase Bank, FSB and the ROTONDA discriminated against plaintiff inserting a condition that if plaintiff did not pay the condominium fees while owner, the bank will pay it and adds to charges – the "Banks/Financial institution" want to take over $500,000.00 property for much lower amount owed on the property and the plaintiff was driven to bankruptcy by them to begin with – EVERY ONE WANTS THEIR SHARE AND PLAINTIFF IS TOLD: WE PREVENT YOU FROM WORKING, FORCE YOU INTO USING UP EVERY FUNDS YOU HAD, ENTANGLED YOU AND LYNCHED YOU FOR YEARS, AND WILL PUT YOU ON THE STREET – GO GET JUSTICE AND WHAT IS OWED TO YOU, AND THE DEFENDT(S), AND ITS COUNSEL WANTS TO SHOW THAT THE LIFE-STYLE OF FATEMEH NAJAFIAN MUST BASED ON $200.00/MONTH FOOD STAMPS AND THEREOFE THERE IS NO HARDSHIP AND NO UNDUE HARDSHIP IS EXPECTED SINCE OUT OF DESPIRATION SHE HAS REDUCED TO A VEGETATIVE STATE AFTER 32 YEARS OF EDUCATION.

NO. 13:     "State both the Adjusted Gross Income on Plaintiff's federal Tax return and the amount, if any, of all federal and state tax refunds for the past five (5) tax years.
Plaintiff has supplied as part of Creditor's Meeting several

(7)

years of her tax papers to the interim trustee and be happy to present as many years as requested for examination and does want her identification numbers to be flying in boxes in multiple offices, an additionally, plaintiff is so broke making copies have become a financial hardship.

And most importantly, the plaintiff has not worked for the last Almost six years at this time and has had NO INCOME FROM EMPLOYMENT- all reported on her Taxes are what was supposed to be saved for retirement, and not to be all gone before retirement.

As an additional piece of information, plaintiff would like to inform the defendant(s) and the Court that:

Plaintiff started her employment at the George Washington University in late June of 1991 and after years of going and coming she was signed up for a benefit given to every George Washington University employee at the orientation and plaintiff was not- plaintiff was finally signed up in July 1997, and for the part George Washington University contributed much restriction applied by the TIAA-CREF on behalf of George Washington University which has made the restriction a 20 years period total and not ten year.

At the Capital Eye Physicians and Surgeons, although the economy "booming" plaintiff was kept being told her retirement did not make appreciation, and after plaintiff was terminated the rules changed without any documentation and Capital Eye Physicians and Surgeons LLC withheld and took away all of its contribution from the plaintiff!

NO. 14:     Plaintiff only speaking for herself.
This INTERROGATORY is non-specific to the subject matter without any period limitation.
Health Insurance: while working was a part of the employment package at George Washington University, Capital Eye Physician and Surgeons, LLC.
After departure from Capital Eye Physicians and Surgeons, LLC, plaintiff paid for it out of pocket until January 2010.

Life Insurance: to best of plaintiff's recollection she did have Life insurance at both  George Washington University and Capital Eye Physicians and Surgeons, LLC, and perhaps others. Her calls to find more information ignored.
And therefore, plaintiff Authorizes the Court and the defendant(s)  through the Court in this case to

(8)

directly request/by Court Order such information to be sent to the Court directly for all to examine. Additionally, plaintiff has contacted certain institutions, entities for certain information which has been asked from her in this INTERROGATORIES, but her calls have been unanswered. And therefore and once more the plaintiff Authorizes the Court and the defendant(s) through the Court in this case to directly request/by the Court Order any and all Documents that defendant(s), and the Court may want to examine and plaintiff, defendant(s) and the Court to question individuals associated with any and all Documents and even be subjected to polygraphing when accuracy or authenticity is/are doubt. And that these Documents to be sent directly to the Court for protection of all.

**Malpractice Insurance:** this was always a part of package employments, and including during plaintiff's trainings since her graduation from Georgetown University School of Medicine, May 1990.
The Capital Eye Physicians and Surgeons, LLC. Had tricked another physician who also terminated without a cause to sign a paper during the busiest hours of seeing and caring for the patient and warned the plaintiff to be on the watch and this was attempted but each time plaintiff made sure to put notation that she was signing on behalf of Capital Eye Physicians and Surgeons, LLC ( which clearly had been stated in every Letters of Understandings  in place of contracts between Fatemeh Najafian and Capital Eye Physicians and Surgeons, LLC. And this issue after the arbitration created *much hardship for plaintiff and finally was resolved and the* inaccuracy was finally removed from plaintiff's credit Bureau files after the filing of the petition (the states to the effect had been read out loud from the Letters of Understanding between plaintiff and Capital Eye Physicians and Surgeons, LLC by plaintiff's attorneys, examined by arbitrator and acknowledged by the employer ~ yet plaintiff had to go through months and months of writings and long telephone calls until it was resolved.

Insurances purchased and  charged to the plaintiff and added to the costs and monthly payments at the time of purchase of her property located at 8340 Greensboro Drive #322, McLean, Virginia 22102 and its garage space #12 at B-2 level. Additional insurances purchased by plaintiff and she paid both personally and included in condominium and several times both to the ROTONDA and the Insurance company for plaintiff to pay

(9)

separately was denied by both the ROTONDA and the Insurance Company Alliance. Alliance equally rejected to even speaking to plaintiff when she had been suffering from the fumes and irritants due to faulty Generators installed outside her windows and for years.

**NO. 15:**   Included in the Bankruptcy Case No 09-18112-BFK, and Associated Adversary cases.

**NO. 16:**   Included in the Bankruptcy Case No. 09-18112-BFK and Associated Adversary cases.

**NO. 17:**   N/A

**NO. 18:**   Plaintiff has been living at substandard of living on $200.00 per month (two hundred dollars per month food stamps) since 8/15/2011 and without using heat or cooling and twice assistance for Electric bill assistance (9/1/2011 about $209.00 and 01/2012 about $138.00), and has been selling her family jewelry (documents kept with picture including in plaintiff's safe deposit box) to pay for bare minimum of other necessities and costs associated with preparing documents for the Courts. Plaintiff's Standard of Living is included in the Bankruptcy Petition. And if plaintiff is forced to pay defendants would beyond UNDUE HARDSHIP and would be "ABSOLUTE" UNDUE HARDSHIP, and not COMPATIBLE WITH LIFE in any form or shape.
PLAINTIFF HAS NO INCOME.

**NO. 19:**   Plaintiff has no income at this time. (please re-read NO. 18) Plaintiff has been unemployed since 3-24-2006.

**NO. 20:**   (1):  The amounts paid for repayment of Student Loans was much higher than required and even when plaintiff was working still lived economically and her paychecks were split between her Student Loans her Condominium Mortgage and other costs associated with it and car payment – and after all the education Still does not have basic furniture in her household.
(2):    Plaintiff has offered and in fact has pleaded with Sallie Mae, INC, Department of Education …to be allowed to give service in her field in the tri-state area with much need in her Field of Ophthalmology and Glaucoma, but has not been given a chance. Plaintiff and due to high payments even when worked had asked for such an arrangement, so that she could

(10)

have what would be at least 50% of life-style of an Ophthalmologist in America or anywhere else in the world.

(3):    When Sallie Mae, INC. purchased some of plaintiff's Medical Education Student Loans, it was offered to plaintiff at a discounted rate twice each time the offer was for about 60 days, and plaintiff had agreed to continue paying the high repayments and was hoping to pay that portion of her loan in a short time.

(4):    the so-called "Ford" program, the plaintiff (despite being on the phone many times and for many hours) was informed by Sallie Mae, INC. only once in July 2009, and with incomplete and partial information and too late and the payments demanded from her,  she could not afford and plaintiff was told she was not qualified (Plaintiff was already using her limited left over retirement funds).

(5):    Plaintiff offered Sallie Mae, INC. a settlement of about $93,000.00 (from over *two million dollar damages* ) at the American Arbitration Association, but Sallie Mae, INC declined based on preferring to keep the plaintiff on Forbearances with high interest rates and capitalization of the interests every quarter or so, and the unsatisfactory amount plaintiff could offer.

NO. 21:    **None.**
After loss of employment on 3-24-2006, plaintiff purchased Health Insurance and paid for it out of pocket until January 2010. And even when she was exposed to toxic fumes and irritants at her home due to faulty generators under her windows for years, she could not afford to go to emergency room and the *Rotonda's Insurance on the property paid by the* plaintiff refused to pay and plaintiff could not seek medical attention and since 2011 has had back problem from the residual effects as well as "wheezing" but has to wait until September 05, 2012 to become eligible for Medicare, and the Fairfax County has the same age limitation (65 or older) as Medicare.

NO. 22:    Please re-read NO. 21. And:
When plaintiff purchased insurance after she became unemployed in March 2006, she had co-pays for both visits, tests (CT SCAN). From January 2010 she could no longer pay for high cost of insurance and saw her physician and paid out of pocket at $80.00/visit and her medication cost. And plaintiff has to wait until age 65 to be able to get Medicare (9/05/2012).

(11)

NO. 23:    *Deferred until receive Response to plaintiff's
INTERROGATORIES AND Requests for Documents from
Defendant(s).*

NO. 24:    To the knowledge of the plaintiff the remainder of plaintiff's
Retirement accounts is with the TIAA-CREF and has been told
there is less than $10.000.00 in it and plaintiff does not know
how it is invested and therefore plaintiff authorizes the Court
Orders directly for TIAA-CREF supply the Court with
information, as well any and all the life insurances with George
Washington University and Capital Eye Physicians and
Surgeons, LLC. Or any other that may be of interest to the
defendant(s) and the Court, so that the plaintiff is not accused
of withholding any information about any and all related to
NO. 24 or any and all listed numbers in this document.

NO. 25:    None other than a few dollars (less than $50.00 ) in plaintiff's
*Retirement account with Wells Fargo/WACHOVIA Bank, and
what has been already described in NO. 24 above.*

NO. 26:    No Promissory Note.
Now:
A loan to a Jilla Vanover from plaintiff before plaintiff
became unemployed paid to Jilla Vanover by plaintiff's first
Home Equity Line of Credit – the $3,000.00 (three thousand
dollars) check was to be scanned and kept by the Chevy Chase
Bank, FSB once cashed. <u>Perhaps a Court Order would obligate
its production by Chevy Chase Bank,FSB/Trust;</u> which was
not done at plaintiff's request and plaintiff paid that loan back
to that Home Equity Line of Credit (this is included in the
plaintiff's bankruptcy petition and the interim trustee
abandoned it. And in return of this kindness from plaintiff to
Jilla Vanover, she not only did not pay back the loan, the
Chevy Chase Bank FSB's refusal to reproduce the copy of the
check which had been cashed by Jilla Vanover at Chevy Chase
Bank,FSB in Great Falls Virginia where she lived at the time
and recalled by the managers at that branch and after the
check being cashed by Jilla Vanover the documents and the
stamped cashed check had been sent as was routine to
headquarters of the bank. And in return Jilla Vanover did not
return copies of plaintiff's document was left with her in trust
which included plaintiff's employment contracts and a tape of
meeting in relationship to the employment contract and
plaintiff's complaints of lack proper compensation and
objection to collection of her fees for services in the name of

(12)

one of the partners of the Capital Eye Physician and Surgeons, LLC and improper distribution of patients and .. were not returned to plaintiff in assistance to plaintiff's employer during AAA arbitration!

In The Future: we have to wait for justice and recovery of damages to plaintiff.

NO. 27:    None to plaintiff's knowledge. If the Court would like to explore, plaintiff welcomes it and much appreciate it.

NO. 28:    I shall continue to show interest to keep my home located at 8340 Greensboro Drive #322, McLean, Virginia 22102 and its garage space #12 at B-2 level.

NO. 29:    The property is included in the bankruptcy petition and the market value should $500,000.00 -$550, 000.00.

NO. 30:    Not to plaintiff's knowledge.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CERTIFICATE OF NOTICE AND THE LIST ATTACHED

Respectfully Submitted

02-08-2012

Fatemeh Najafian  (PRO SE)    Date Filed
Plaintiff,
8340 Greensboro Drive #322
McLean, Virginia 22102
Tel: 703-203-3980

# CERTIFICATE OF NOTICE

I, Fatemeh Najafian, Plaintiff/Debtor, Certify that a true copy of this ————
*ATTACHED* ᴐ Document was served by regular/First Class mail this
*08th* day of ~~February~~, 2012 on the following:

MS. Brenda Golembski
Sallie Mae, INC
220 Lasley Ave.
Wilkes Barre, PA. 18706
Tel: 570-821-3600 EXT 323

Mr. Kevin R. McCarthy, Esquire
Interim Trustee
1751 Pinnacle Dr. #1115
McLean, VA. 22102
Tel: 703-770-9261

Mr. W. Clarkson McDow, Jr. 11
U.S. Trustee, and

Mr. Rand L. Gelber, Esquire
One Church Street, Suite 802

Martha Davis, Esquire
Office of The United States Trustee
115 South Union Street Suit # P210
Alexandria, VA. 22314
Tel:   703-557-7176
Fax:   703-557-7279

Rockville, MD  20850
Tel: 301-251-0202 X 16, & X 19
Fax: 301-241-0849

Document: plaintiff's Response to Defendant(s) First Set
of Interrogatories and First ~~Fatemeh Najafian~~
Request For production
of Documents.
( pages 1-13)

FATEMEH NAJAFIAN
Plaintiff (PRO SE)
8340 Greensboro Drive # 322
McLean, Virginia 22102
Tel: 703-203-3980

(14)