UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| FATEMEH NAJAFIAN | : | Case No. 09-18112-BFK |
| | : | |
| Debtor | : | Chapter 7 |
| _____ | : | |
| | : | |
| FATEMEH NAJAFIAN | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Adversary No. 11-01650 |
| | : | |
| EDUCATIONAL CREDIT | : | |
| MANAGEMENT CORPORATION | : | |
| | : | |
| Defendant | : | |

_____

**DEFENDANT EDUCATIONAL CREDIT MANAGEMENT CORPORATION'S**
**PRETRIAL MEMORANDUM**

Defendant, Educational Credit Management Corporation ("ECMC"), by and through counsel, Rand L. Gelber, submits its Pretrial Memorandum, and states as follows:

**I.       INTRODUCTION**

Plaintiff filed a Voluntary Petition under Chapter 7 of the United States Bankruptcy Code on or about October 2, 2009, and thereafter, on or about December 5, 2011, filed this Adversary Proceeding pursuant to 11 U.S.C. §523(8)(a) seeking a determination of non-dischargeability of her student loan debt based upon "undue hardship." Defendant respectfully submits that Plaintiff will not be able to meet her burden of proof to establish "undue hardship" because she fails to

satisfy the three *Brunner* prongs, and is unable to otherwise establish "undue hardship" as recognized in the Fourth Circuit.

## II.   MATERIAL BACKGROUND

Debtor consolidated some of her student loans on October 26, 2007, and the disbursement was in the amount of $216,996.65. Debtor took out eight other loans that have not been consolidated and were disbursed between February 21, 1984 and December 5, 1989, for a total of $44,500.00. Thus, the total disbursement amount for Debtor's nine student loans is $261,496.65. Debtor's nine student loans, including the consolidated loan, were transferred from Sallie Mae, Inc. to ECMC on or about December 21, 2011. The principal balance on the student loans is $346,806.25, with unpaid interest in the amount of $10,057.05, and statutory fees and costs in the amount of $86,413.08, for a total owed in the amount of $443,276.38, as of December 20, 2011. Debtor has not made any payment on her student loans to ECMC at all however there were payments made to Sallie Mae by the Plaintiff several years ago.

ECMC loans were used to fund Debtor's education from 1980 through 1990, for her studies at Howard University and Georgetown University School of Medicine. The subject loans are educational loans as contemplated under §523(a)(8) of the United States Bankruptcy Code, were made under §428(c) of the Higher Education Act of 1965, and are, presumptively, non-dischargeable. ECMC is a non-profit corporation operating as a guaranty agency under the Department of Education's Federal Family Education Loan Program, pursuant to the Higher Education Act.

Pursuant to her response to ECMC's First Set of Interrogatories and Request for Production of Documents, Plaintiff is an unmarried woman with no dependents.

Debtor received a Bachelor of Arts from the College of Letters and Foreign Languages in Tehran, Iran, in 1971. In 1975, Debtor received a Masters of Arts in Special Education from George Washington University in Washington, DC. From 1975-1978 Debtor worked towards earning a doctorate in Special Education from George Washington University, but did not complete her degree. From 1980-1983 Debtor attended a pre-medical program at Howard University in Washington, DC. In May, 1990, Debtor received a Doctor of Medicine from Georgetown University School of Medicine in Washington, DC. From 1991-1992 Debtor did her Internship in Internal Medicine at the George Washington University Medical Center in Washington, DC. From 1992-1995, Debtor did her Residence in Ophthalmology at the George Washington University Medical Center. From 1995-1996 Debtor did a Fellowship in Ophthalmology: Medical Glaucoma at the George Washington University Medical Center. From July, 1999 through July, 2000, Debtor did a Fellowship in Ophthalmology: Glaucoma at Eye Health Care Associates / Sure Vision in St. Louise, Missouri.

From 1978 through 1980, Debtor was employed at Perception International, Inc. in Washington, DC. From 1985-1986 Debtor was a Teaching Assistant in Biochemistry and Physiology at Georgetown University School of Medicine. From 1977 through April, 1999, Debtor was employed by George Washington University Medical Center as a Technical Staff member in Ophthalmology. From April, 1999 through June, 1999, Debtor was employed by George Washington University Medical Center as an Attending Physician in the Ophthalmology Department. From September, 2001 through March, 2006, Debtor was employed as an Ophthalmologist by Capital Eye Physicians and Surgeons, LLC in Washington, DC and Maryland.

Debtor has been unemployed for the past six (6) years.

Debtor currently holds active licenses to practice Medicine and Surgery in Maryland, Virginia, and the District of Columbia. Debtor also has an inactive license to practice Medicine and Surgery in Missouri.

Debtor's Adjusted Gross Income for 2007-2011 was $11,617.00, $92,255.00, $42,380.00, $19,700, and $6,795.00, respectively. Debtor has not received any employment-related income since 2006, as she has been unemployed since that time. The vast majority of Debtor's income from 2007-2011 has been from IRA distributions, with the exception of 2008, when Debtor listed income from a legal settlement in the amount of $92,255.00.

Debtor currently has no employment income, however, she receives $200 per month in food stamps.[1]

According to Debtor's Schedule "J," her itemized monthly expenses at the time of its filing are as follows:[2]

| Expense | Cost |
|---|---|
| Rent/Mortgage: | $ 2070.13 |
| Gas/electricity/heat: | $ 100.00 |
| Water/Sewer: | $ 0.00 |
| Telephone: | $ 100.00 |
| Home Maintenance: | $ 0.00 |

---

[1] In the Schedule I of Debtor's Voluntary Petition for Bankruptcy, filed in October, 2009, she stated that her present income was $0, despite receiving income in the amount of $92,255.00 in 2008 (or $7,688 per month) and $42,380.00 in 2009 (or $2,532 per month). Accordingly, ECMC is unaware of the accuracy of Debtor's claim that she currently has no income.

[2] Debtor's expenses were taken from her Schedule J, which were based upon Debtor's circumstances at the time of filing the Bankruptcy Petition in October, 2009, and Debtor's answers to ECMC's Interrogatories were not responsive to the interrogatory regarding her current expenses, however it is ECMC's understanding that Debtor is living in her car and therefore would not have any housing expenses.

| | | |
|---|---|---|
| Food: | $ | 0.00 |
| Clothing: | $ | 0.00 |
| Laundry/Dry Cleaning | $ | 0.00 |
| Medical/Dental: | $ | 0.00 |
| Transportation: | $ | 100.00 |
| Recreation: | $ | 0.00 |
| Charitable Contributions: | $ | 0.00 |
| Homeowners/Renters Insurance | $ | 0.00 |
| Health Insurance: | $ | 376.00 |
| Auto Insurance: | $ | 150.00 |
| Appliance Insurance: | $ | 400.00 |
| Auto Installments: | $ | 724.93 |
| Condo Fees | $ | 622.00 |
| Medical Licenses: | $ | 60.00 |
| AAO Membership: | $ | 85.00 |
| TOTAL | | $ 4,788.06 |

Debtor has not alleged that she has any physical or mental disability that prevents her from finding and/or holding a job. In addition, she has made it clear in her discovery responses that she is not claiming any medical or mental disability with regard to her employability.

### III.   **ARGUMENT**

The dischargeability of an educational loan is governed by 11 U.S.C. § 523(a)(8), which provides, in relevant part, that a general discharge does not discharge an individual debtor from a debt:

> (8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8)(emphasis added).

The standard of "undue hardship" is not defined in the Bankruptcy Code. However, the legislative history of Section 523(a)(8) and the policy underlying that provision readily support the conclusion that student loans are generally not dischargeable in bankruptcy and that the discharge determination is to be subject to a stringent standard. *See In re Brunner*, 46 B.R. 752, 756 (S.D.N.Y. 1985)(discussing the legislative purpose underpinning Section 523(a)(8)), *aff'd* 831 F.2d 395, 396 (2d Cir. 1987).

A student loan is a unique obligation because the federal government loans students money without requiring the usual protections given to lenders. *In re Roberson,* 999 F.2d 1132, 1135-1136 (7th Cir. 1993). Thus, the taxpayers put their faith in a student to pay back the loan as it comes due. *Id.* The Congressional policy is to provide higher education; it is not Congress's policy to provide it for free. *In re Heckathorn, 199 B.R.188, 193*(Bankr.N.D. Okla.1996). Therefore, this Circuit has determined that, Congress selected the word "undue," as the required hardship under § 523(a)(8) for a reason. *In re Frushour*, 433 F.3d 393, 399 (4th Cir. 2005). As

such, the hardship "must be more than the usual hardship that accompanies bankruptcy. Inability to pay one's debts by itself cannot be sufficient; otherwise all bankruptcy litigants would have undue hardship. The exception would swallow the rule, and Congress's restriction would be meaningless. As a result, '[t]he existence of the adjective 'undue' indicates that Congress viewed garden-variety hardship as insufficient excuse for a discharge of student loans.'"*Id*. (citing *Rifino v. United States* (*In re Rifino*), 245 F.3d 1083, 1087 (9th Cir.2001)).

To determine whether a debtor has established "undue hardship," this Court has adopted the three-prong test set forth in *Brunner v. New York Higher Educ. Servs.Corp.*, 831 F.2d 395 (2d Cir. 1987).*See also Frushour*, 433 F.3d at 400. Under *Brunner,* a debtor cannot discharge a student loan unless he can establish that:

(1) he cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans;

(2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for the student loans; and

(3) he has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396.

The debtor bears the burden of showing the existence of all three prongs by a preponderance of the evidence.*Spence v. Educ. Credit Mgmt. Corp.* (In re *Spence*), 541 F.3d 538, 443-44 (4th Cir. 2008). *See also Grogan v. Garner*, 498 U.S. 279, 291 (1991). All three elements must be satisfied before a discharge can be granted. *Pa. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3d Cir. 1995). Thus, if any one of the requirements is not met, the bankruptcy court's inquiry must end and no part of the loan can be discharged. *Id*.

The first prong simply requires the Court to review the Debtor's income and expenses and make a determination as to whether or not they can maintain a "minimal" standard of living if required to repay the loans. It appears from the discovery responses that the Plaintiff's expenses exceed her income, for purposes of this analysis.

The second Brunner prong requires a student loan debtor to establish that additional circumstances are present which indicate an inability to maintain a minimal standard of living for herself and her dependents if required to repay the student loans, and that the "additional circumstances" are likely to exist for a significant portion of the repayment period. *Ekenasi v. The Educ. Res. Inst. (In re Ekenasi)*, 325 F.3d 541, 546 (4th Cir. 2003) (citing *Brunner*, 831 F.2d at 396). The Fourth Circuit recently found that the second prong is "the heart of the Brunner test" and "most clearly reflects the congressional imperative that the debtor's hardship must be more than the normal hardship that accompanies any bankruptcy." *Frushour*, 433 F.3d at 401.[3]

The Fourth Circuit has established that "Debtors receive valuable benefits from congressionally authorized loans, but Congress in turn requires loan recipients to repay them in all but the most dire circumstances." *Frushour*, 433 F.3d at 399 (citing *Faish*, 72 F.3d at 306). Najafian's significant and impressive education leaves her far from the dire circumstances that would suffice as additional circumstances sufficient to meet Brunner's second prong. Debtor fails to satisfy the second *Brunner* prong because she has failed to show that additional circumstances exist indicating that her current situation will persist for the remainder of the loan repayment period. Debtor has not alleged or provided evidence to suggest that she suffers from any mental of physical disability or other health-related problems that render her unable to maintain gainful employment as a doctor, or any other profession.

---

[3] *See Brunner*, 831 F.2d at 396, aff'd 46 B.R. 752, 756 (S.D.N.Y. 1985)(discussing the legislative purpose underpinning Section 523(a)(8)).

The second prong of the Brunner test has been characterized as a "'demanding requirement,' necessitating 'a certainty of hopelessness' which confirms that the debtor will not be able to repay the loans," *In re Spence*, 541 F.3d at 544 (citing *Frushour*, 433 F.3d at 401), and it is intended that '[o]nly a debtor with rare circumstances will satisfy this factor." *Frushour*, 433 F.3d at 401 (citing *Brightful v. PA Higher Edu. Assistance Agency (In re Brightful)*, 267 F.3d 324, 328 (3rd Cir. 2001)). As the Fourth Circuit recognized in *Frushour*:

> The appellate courts have thus declined to allow debtors to discharge their student loans in cases where their circumstances at the time of the adversary proceeding were similar or even more compelling. *See, e.g., In re Alderete,* 412 F.3d 1200, 1203, 1206 (10th Cir. 2005)(no undue hardship on debt of $78,000 for debtors with three children and low-paying jobs); *In re Oyler*, 397 F.3d 382, 384, 386 (6th Cir. 2005) (no undue hardship on debt of $40,000 for debtors with three children and $10,000 annual income over last two years); *Brightful*, 267 F.3d at 326, 329-31 (no undue hardship for debtor who had one dependent, even though she was forced to live with her sister, had no college degree, and was "emotionally unstable" with "glaring psychiatric problems"); *Brunner*, 46 B.R. at 756-58, aff'd, 831 F.2d 395 (2d Cir.1987) (no undue hardship where the debtor was unemployed and on public assistance, had made at most $9,000 per year over the previous several years, and had sent out "over a hundred" resumes in her chosen field, without success).

*Frushour*, 433 F.3d at 404.

Defendant submits that the Debtor will be unable to satisfy this prong. Debtor fails to satisfy the second prong of Brunner insofar as she has failed to show that she will be unable to earn a living in the future, utilizing the professional degrees that the subject student loans funded. Debtor has not yet attempted nor does she intend on looking for employment outside the medical field. Even in the event that Debtor does not successfully find employment as a doctor, she holds a Bachelors of Arts, a Masters of Arts in Special Education, and a Doctor of Medicine, and should be able to find employment in the medical field or another field. Thus, the likelihood is that if the Debtor were to look for employment in another field, she would successfully find and

maintain gainful employment. In addition, there are many positions in the medical field for individuals other than board certified physicians. Additionally, Debtor currently holds active licenses to practice Medicine and Surgery in Maryland, Virginia, and the District of Columbia. Debtor also has an inactive license to practice Medicine and Surgery in Missouri. She has also failed to allege the existence of any "additional circumstances" beyond her current financial distress that would prevent her from repaying her loans in the future. In other words, Plaintiff has not articulated any additional circumstances "outside of the normal hardships faced by bankruptcy petitioners that would render her situation hopeless." *In re Spence*, 541 F.3d at 544.

The third prong of Brunner requires the Debtor to show good faith efforts to repay the loans. "Good faith is comprised of 'the debtor's efforts to obtain employment; maximize income, minimize expenses, […and] seriously pursue loan consolidation options." *Shank v. Educ. Credit Mgmt. Corp.* (In re *Shank*), Ch. 7 Case No. 05-73943-FJS, Adv. No. 07-7087, slip. op. at 15 (E.D. Va.Aug. 5, 2008) (citing *Educ. Credit Mgmt. Corp. v. Mosko* (In re*Mosko*), 515 F.3d 319, 324 (4th Cir. 2008). "Furthermore, a debtor may not 'willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control.'" *Id.*, slip.op. at 16 (quoting *In re Mosko*, 515 F.3d at 324). Plaintiff fails to satisfy this prong as she has made no efforts to make payments on her student loans in the past several years.

Debtor also fails to meet the criteria for discharge imposed under Brunner as to prong three for failing to minimize her expenses and maximize her income. At the time she filed for bankruptcy, Debtor claimed to have mortgage and condo fee expenses in the amount of $2,692.13 per month, auto payments for her Mercedes in the amount of $724.93 per month, and appliance insurance payments in the amount of $400 per month. These amounts could have, and should have, been drastically reduced.The standard for minimizing expenses when seeking to

discharge student loan debt is very clear; the Debtor must do everything to eliminate all excess spending from her budget before she can be excused from repaying educational loans." *In re Shank*, slip.op. at 18.

Moreover, Debtor has not sought other employment, a factor in determining whether Debtor has maximized income. *In re Spence*, 541 F.3d at 544. Debtor has not maximized her income, as she currently has no income, and refuses to look for work outside of the field of medicine, despite being unable to find employment as a physician for the last six (6) years. Accordingly, Debtor has not satisfied the third *Brunner* prong as she has not maximized income and minimized expenses.

In addition, another important factor to be considered when evaluating good faith is the William D. Ford Direct Loan Program ("Ford Program").[4] The Ford Program is codified at 34 C.F.R. 685 et seq. Najafian's loans are eligible for the Ford Program. See 34 C.F.R. § 685.220. Pursuant to this section of the federal regulations, Najafian is eligible for the Income Contingent Repayment Plan ("ICRP"). The ICRP is further detailed in 34 C.F.R. § 685.208(f) and 34 C.F.R. § 685.209. Under the ICRP, a debtor's payments generally equal 20% of the difference between the debtor's adjusted gross income and the federal poverty guidelines for the debtor's family size. 34 C.F.R. § 685.209. The payment amount changes on an annual basis depending on the debtor's reported household adjusted gross income. If the debtor's adjusted gross income is below the poverty level, the debtor's payment is zero, but the loan remains in a "current"

---

[4] *See Douglass v.Great Lakes Higher Educ. Servicing Corp. (In re Douglass)*, 237 B.R. 652, 657 (Bankr. N.D. Ohio 1999)(discharge was denied because debtor failed to avail herself to consolidation options); *Thoms v. Educ. Credit Mgmt. Corp. (In re Thoms)*, 257 B.R. 144 (Bankr. S.D. N.Y. 2001) (student loan discharge denied in part due to debtor's failure to avail herself of payment options).

payment status. Id. The term is 25 years, and, at the end of the 25-year-period, any unpaid balance remaining is cancelled or forgiven by the Secretary of Education. Id.

The Fourth Circuit has determined that, although not always dispositive, "the debtor's effort to seek out loan consolidation options that make the debt less onerous is an important component of the good-faith inquiry because such efforts demonstrate that the debtors take their debts seriously and are doing their utmost to repay them despite their unfortunate circumstances." *Frushour*, 433 F.3d at 402.*See also Alderete*, 412 F.3d at 1206.

Like the Debtor in *In re Spence*, Najafian has not fully explored the "possibility of loan consolidation programs that offer reduced payments based upon the debtor's limited income." 541 F.3d at 545. In addition to the program and its terms being available pursuant to federal regulations, Debtor was further provided detailed information about the Ford Program via a letter sent to her via Defendant's counsel dated June 7, 2012 (See ECMC's trial Exhibit #I). Pursuant to that letter, Debtor's monthly payment would be $0.00. Najafian has declined to consolidate her loans through the Ford program or otherwise.

As the Third Circuit Court of Appeals explained, "[F]ederal student loan programs were not designed to turn the government into an insurer of educational value." *Faish*, 72 F.3d at 305, quoting *Brunner*, 46 B.R. 752 at 756. "Since the decision of whether or not to borrow for a college education lies with the individual, it is the student, not the taxpayers, who must accept the consequences of the decision to borrow." *Faish*, 72 F.3d at 305(quoting *Roberson*, 999 F.2d at 1137). In other words, when a student loan borrower accepts money from the government, she strikes a bargain. And "[l]ike all bargains, it entails risk. It is for each student individually to decide whether the risks of future hardship outweigh the potential benefits of a deferred-payment education." *Brunner*, 46 B.R. at 756.

## IV. CONCLUSION

Debtor is not entitled to a determination that her student loans are dischargeable because she has failed to satisfy the three *Brunner* prongs. [Firstly, based on her current income and expenses, Debtor is able to maintain a "minimal" standard of living for herself and herdependents if forced to repay the loans.] Secondly, Debtor has failed to show that any additional circumstances exist that would prevent her from maintaining her employment in the future or that she will not be able to make some payment on these loans now or in the future. Finally, Plaintiff has failed to show that she has made any good faith attempt to make payments on these loans or that she has minimized her expenses and maximized her income.

For the foregoing reasons and such evidence as may be adduced at trial, Defendant respectfully submits that Plaintiff will not be able to satisfy her burden of proof to establish "undue hardship" imposed under *In re Brunner*, 46 B.R. 752 (Bankr. S.D.N.Y. 1985), and adopted by this Circuit in *In re Frushour*, 433 F.3d 393 (4th Cir. 2005) and other more recent published opinions cited in this memorandum.

          Educational Credit Management Corp.,
          By Counsel

/s/ Rand L. Gelber
_____
Rand L. Gelber VSB #23991
*Counsel for Defendant ECMC*
1 Church Street, Suite 802
Rockville, MD  20850
301-251-0202 x 16
301-251-0849 (fax)
RgelberMD@aol.com

# CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a copy of the foregoing Pretrial Statement of Defendant Educational Credit Management Corporation was sent via first-class mail, postage prepaid, and via e-mail, this 6th day of September, 2012 to:

Fatemah Najafian, MD
P.O. Box 417
Great Falls, VA 22066

And

Dr.fatemehnajafian@gmail.com


                                    /s/ Rand L. Gelber

                                    _____

                                    Rand L. Gelber